IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES CRAWFORD,<br><br>Defendant. | 4:23CR3047<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

This matter is before the Court on Defendant, Charles Crawford's, motion to suppress. Filing No. 42. Defendant seeks to suppress any and all evidence obtained as a result of a search of his vehicle on May 16, 2022. *Id*. Crawford claims Hall County Deputy Sullivan did not have probable cause, consent, or a warrant to search his vehicle and, as such, the May 16, 2022 search violated his Fourth Amendment rights. The Court held an evidentiary hearing on Defendant's motion on March 6, 2024.[1] The Court stated the motion would be deemed submitted upon receipt of the transcript. The transcript was filed on April 4, 2024. This matter is now ripe for disposition.

For the reasons discussed below, the undersigned recommends Defendant's motion to suppress be denied.

---

[1] Defendant's motion briefly challenged the validity of the May 16, 2022 traffic stop in his motion. This argument was not addressed in Defendant's brief in support of his motion. The Defendant clarified at the hearing that he does not challenge the validity of the traffic stop, but, instead, solely challenges the search of the Vehicle. Accordingly, any arguments unrelated to the search of the Vehicle are not before the Court. Filing No. 62 at 4-6.

1

## STATEMENT OF FACTS

After reviewing the evidence admitted at the hearing and observing the testimony of Deputy[2] Draper Sullivan, the undersigned magistrate judge finds the following facts are credible.

On May 16, 2022, Hall County, Nebraska Sheriff's Deputy Sullivan was on routine patrol and observing a residence located at 123 W 13th St., Grand Island, Nebraska 68801 ("Residence"). Filing No. 62 at 21-22. Prior to this surveillance, Deputy Sullivan was aware the Residence was associated with drugs, associated with individuals with outstanding warrants, and housed individuals who were known drug users and drug distributors. Id. at 23-27. Deputy Sullivan testified that, prior to May 16, 2022, he was aware of two individuals who were known drug users and/or had previously been charged with drug distribution who resided at the Residence. Id. at 24. In addition, on May 12, 2022, four days before the search at issue, Deputy Sullivan attempted a traffic stop on a vehicle that had just left the Residence. This vehicle fled from the traffic stop at a high rate of speed and, ultimately, Deputy Sullivan discontinued the pursuit. Id. at 27-29. Deputy Sullivan learned this information from his own observations, other law enforcement officers, and Sheriff's Office databases. Id. at 27.

While performing surveillance on May 16, 2022, Deputy Sullivan observed Defendant's vehicle, a black 2003 Chevrolet Avalanche ("the Vehicle"), parked in the driveway of the Residence. Filing No. 62 at 31. Deputy Sullivan observed an individual on a bike ride up to Defendant's vehicle, converse with Defendant and another individual who was outside of the Vehicle for a brief period of time, and then leave. Id. at 31-32. As Deputy Sullivan was leaving the area, he observed the Vehicle leave the Residence. Id. at 35.

---

[2] Draper Sullivan is now an investigator with the Hall County Sheriff's Office assigned to the Tri-Cities narcotics investigation unit. On May 16, 2022, the date of the search in question, Investigator Sullivan was a Deputy with the Hall County Sheriff's office and a K-9 handler. Filing No. 62 at 9-10; Filing No. 60, Exhibit 11.

Deputy Sullivan eventually pulled behind the Vehicle. *Id.* When doing so, he observed the state and registration decal on the Vehicle's license plate was fully obstructed from view. Filing No. 62 at 35-36. Deputy Sullivan then performed a traffic stop on the Vehicle. *Id*.

After stopping the Vehicle for the obstructed license plate and advising Defendant as to the reason for the traffic stop, Deputy Sullivan asked Defendant for his license, registration, and proof of insurance. Filing No. 62 at 37. Defendant did not comply. *Id.* Soon thereafter, Deputy Sullivan requested Defendant get out of the Vehicle. *Id*. When Defendant was outside of the Vehicle, Deputy Sullivan observed the butt of a handgun in Defendant's pocket. *Id.* at 38. Deputy Sullivan placed Defendant's hands on the back of the Vehicle and seized the firearm. *Id.* at 39. Defendant advised he had another firearm on his person and Deputy Sullivan located and seized the second firearm. *Id.* Both firearms were loaded. *Id.* After seizing two firearms from Defendant's person, Deputy Sullivan handcuffed Defendant and requested a serial number check on the firearms and a criminal history check on Defendant. *Id.* at 40, 42.

While Deputy Sullivan was waiting for the requested information from dispatch, Deputy Sullivan requested Defendant's consent to search the Vehicle which Defendant denied. Filing No. 62 at 42. Deputy Sullivan then deployed his K9 officer, a certified narcotic detection dog, to perform a free air sniff on the Vehicle. *Id.* at 15, 42-43. The K9 officer did not alert or indicate the presence of narcotics. *Id*.

While his K9 officer was performing his sniff, Deputy Sullivan first observed part of what he believed was a plastic vacuum sealed package in an open green backpack located on the front passenger seat of the Vehicle. Filing No. 62 at 82.

After returning his K9 officer to the patrol vehicle, while still awaiting the records checks, Deputy Sullivan testified he used his computer system to check if Defendant had any recent contacts with law enforcement. Filing No. 62 at 44. He learned that Defendant had been contacted by another Hall County Sheriff's

Deputy, Sergeant Jeremy Jones, while with an individual known to use narcotics and there was a report that Defendant may be concealing narcotics in a subwoofer box in his vehicle. *Id*. According to Deputy Sullivan, these contacts were within two weeks of the May 16, 2022 traffic stop. *Id*.

Deputy Sullivan returned to the Vehicle and observed the suspicious packaging from various angles through the vehicle windows. Filing No. 62 at 46-48. Deputy Sullivan testified that, in his of training and experience, he knows this type of vacuum seal packaging is used in the storage and transport of narcotics. Filing No. 62 at 13-14. At that time, while still outside the Vehicle looking in, Deputy Sullivan testified he observed small amounts of fine white crystalline powder collected in the seams and folds of the packaging. Filing No. 62 at 47. Deputy Sullivan testified that he knows this fine white crystalline powder to be consistent with methamphetamine. *Id*. at 46. This knowledge was based on his training and experience which included specific training on identification of methamphetamine, classes on narcotic interdiction, and routine exposure to narcotics as part of his street patrol duties. Filing No. 62 at 11.

After making this observation, Deputy Sullivan retrieved gloves from his patrol unit and then returned to the Vehicle where he opened the driver's side door, reached to the passenger side, and retrieved the vacuum sealed packaging he had previously observed. Filing No. 60, Exhibit 4 (2:10-3:40). He immediately radioed to dispatch that he had located narcotics. *Id*.; Filing No. 62 at 77. Deputy Sullivan then performed a more extensive search of the Vehicle and located a vacuum sealed container with a sandwich size Ziploc bag containing a large amount of white substance that later field tested positive for methamphetamine. Filing No. 60, Exhibit 11. Deputy Sullivan also located various other contraband items. Filing No. 62 at 49-52; Filing No. 60, Exhibit 11.

Shortly thereafter, dispatch advised Deputy Sullivan that the Defendant had several prior felony convictions. Filing No. 62 at 71; Filing No. 60, Exhibit 6 (26:20).

4

The Defendant was transported to Hall County Corrections and his vehicle was towed by the Hall County Sheriff's Department. Filing No. 60, Exhibit 11.

Deputy Sullivan further testified about the vehicle impoundment and towing procedures for the Hall County Sheriff's Department in effect at the time of the Defendant's stop. Filing No. 62 at 52-55. He provided that, according to the Sheriff's department policy, an officer must complete an inventory of the vehicle prior to towing. *Id.*; Filing No. 60, Exhibit 14. This inventory includes a search of all areas of a vehicle in which items of value may be stored, including closed containers, the trunk, and glove box. *Id*. When asked the difference between a search conducted pursuant to the vehicle impoundment policy and a search based on probable cause, Deputy Sullivan indicated a "probable cause search" may include areas where an individual would not store valuable items such as under the vehicle hood or in the vehicle's door panels. Filing No. 62 at 54-55. Here, Deputy Sullivan searched under the Vehicle's hood but did not locate any contraband. *Id.* at 54.

Defendant moves to suppress all evidence obtained from the search of the Vehicle. He argues the May 16, 2022 search was conducted without probable cause, consent, or a warrant and therefore was in violation of the Fourth Amendment.

## ANALYSIS

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The ultimate touchstone of the Fourth Amendment is reasonableness. *Riley v. California*, 134 S.Ct. 2473, 2482 (2014). Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant. *Id*. "Warrantless searches are *per se* unreasonable unless they fall under an exception to the warrant requirement." *United States v. Farrington*, 42 F.4th 895, 898-899 (8th Cir. 2022) (citing *United States v. Castellanos*, 518 F.3d 965, 969

5

(8th Cir. 2008)). The Court considers applicable exceptions to the warrant requirement below.

**I. Warrantless search**

"[O]fficers may conduct a warrantless search of a vehicle if they have probable cause to believe that the car contains contraband or other evidence." *United States v. Edwards*, 891 F.3d 708, 712 (8th Cir. 2018) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). "The automobile exception permits warrantless searches of an automobile and seizures of contraband where there is 'probable cause to believe that an automobile contained contraband.'" *Farrington*, 42 F.4th at 899 (citing *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016)). Warrantless searches authorized pursuant to the automobile exception include "'places in which there is probable cause to believe that [contraband] may be found,' including containers discovered within the automobile." *Farrington*, 42 F.4th at 899 (citing *California v. Acevedo*, 500 U.S. 565, 579-580 (1991)). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Soderman*, 983 F.3d 369 (8th Cir. 2020) (citing *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017)).

Defendant argues the evidence does not support a finding of probable cause for various reasons. Primarily, Defendant argues the vacuum sealed package with drug residue was not in plain view and that Deputy Sullivan had to move various other items prior to locating the package. Filing No. 43 at 4; Filing No. 62 at 91-93. Because the plain view exception to the warrant requirement can establish the probable cause necessary to search an automobile under the automobile exception, the Court first analyzes the applicability of the plain view doctrine.

Pursuant to the plain view doctrine, "'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *United States v. Class*, 883 F.3d 734, 737 (8th Cir. 2018)

(quoting *Minnesota v Dickerson,* 508 U.S. 366, 375 (1993)). The "incriminating nature" of an object is "immediately apparent" if the officer has probable cause to associate the property with criminal activity. *United States v. Lewis,* 864 F.3d 937, 944 (8th Cir. 2017) (citing *United States v. Craddock,* 841 F.3d 756, 759 (8th Cir. 2016)*.* The Eighth Circuit has further provided ". . . items that an officer finds while actively looking for them are still in plain view if the officer is standing in a place where he has a right to be." *Class,* 883 F.3d at 738 (citing *United States v. Gillon,* 348 F.3d 755, 760 (8th Cir. 2003)). If an officer views contraband in plain sight through an automobile's window, he has probable cause to search that vehicle. *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000).

      Here, Deputy Sullivan was appropriately located outside of the Vehicle which was parked on a public street when he made observations as to what was on the front passenger seat. Specifically, Deputy Sullivan testified that, from various angles outside of the Vehicle, he saw a plastic vacuum sealed package in an open green backpack. Filing No. 62 at 46-48. He testified that based on his training and experience, he knows this type of packaging to be used in the storage and transport of narcotics. *Id.* at 13-14. Deputy Sullivan also credibly testified that he was able to see small amounts of fine white crystalline powder in the seams and folds of the packaging. *Id.* at 46-47. He attested that this substance was consistent with his knowledge of methamphetamine. *Id.*

      The undersigned has reviewed the body camera video, Exhibits 1-5, and the in-car cruiser video, Exhibit 6, extensively, particularly the footage where Deputy Sullivan testified he saw the relevant items. The undersigned notes that, due to the glare from the window, as well as the fact that the bodycam footage is located on Deputy Sullivan's torso not his head, and the overall picture quality, the Court cannot conclude based on the video alone that the vacuum sealed package was visible in the green bookbag or that it contained methamphetamine residue. However, the video evidence is consistent with Deputy Sullivan's testimony, which the undersigned finds to be credible.

Specifically, Deputy Sullivan's body worn camera shows him take interest in an item in the front passenger seat and then move around the Vehicle to obtain a closer look through the passenger side window. Filing No. 60, Exhibit 4 (1:05-1:55). Deputy Sullivan then retrieves gloves from his patrol vehicle, opens the door, and reaches almost directly for the item in question. Id. (2:15-3:20). He then immediately notifies dispatch of the presence of narcotics in the Vehicle. Filing No. 60, Exhibit 4 (3:20-3:35); Filing No. 62 at 70. Deputy Sullivan's testimony that he saw what he recognized to be a vacuum sealed bag with methamphetamine residue is consistent with his bodycam footage.

The incriminating nature of a vacuum sealed bag containing what he recognized to be methamphetamine residue provided Deputy Sullivan probable cause to seize the bag of suspected drugs. *See Gillon*, 348 F.3d at 759-60. (finding seizure of drugs viewed through a vehicle's window constitutional under the plain view doctrine); *U.S. v. Allebach*, 526 F.3d 385 (8th Cir. 2008) (holding that "two plastic bags with cocaine residue, two corners torn from plastic bags, Brillo pads, [and] a film canister with white residue ... were sufficient to establish probable cause that cocaine was being possessed and consumed in [the defendant's] residence); *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (officers' observation of "an item commonly used in the manufacture of methamphetamine ... in plain view in the back seat" of a vehicle gave officers probable cause to search the vehicle for further contraband or evidence); *United States v. Munoz*, No. 4:08CR3069, 2008 WL 5069822, at *4 (D. Neb. Nov. 21, 2008) aff'd, 590 F.3d 916 (8th Cir. 2010) ("The discovery of drug paraphernalia (even without any drug residue) provides probable cause to search the entire automobile in which the paraphernalia were found for the presence of controlled substances.").

In short, Deputy Sullivan had probable cause to seize the bag and search the Vehicle pursuant to the automobile exception after he saw a vacuum seal bag containing methamphetamine residue in plain view through the Vehicle's window. This finding is determinative. To be thorough, however, the undersigned also

analyzes the remaining facts surrounding this encounter and concludes that Deputy Sullivan had probable cause to conduct a warrantless search of the Vehicle based on the totality of the circumstances.

Specifically, prior to performing the traffic stop, Deputy Sullivan was monitoring a residence which he knew was associated with drugs, associated with individuals with outstanding warrants, and housed individuals who were known drug users and drug distributors. Filing No. 62 at 23-27. He learned this information from his own interactions and other law enforcement contacts. *Id.* He observed Defendant's vehicle to be in the driveway of this residence and saw the Defendant interact with individuals standing outside the home. *Id.* at 31-32. Shortly before the traffic stop, Deputy Sullivan observed the Vehicle engage in an interaction that, based upon his training and experience, was consistent with a hand-to-hand drug transaction. *Id.* at 33-34.

After the traffic stop, Deputy Sullivan found two loaded firearms on Defendant. Filing No. 62 at 38-39. And, as testified to by Deputy Sullivan, firearms are tools of the drug trade. *Id.* at 17. He then observed a blow torch on the center console of the Vehicle which he testified was consistent with smoking narcotics. *Id.* at 76. Finally, during his observation through the Vehicle's windows, he viewed vacuum sealed packaging which he knows to be associated with the storage and transport of narcotics. *Id.* at 13-14, 46-48. Deputy Sullivan possessed substantial background information on the Residence and associates he observed interacting with Defendant prior to the stop. That background information, considered together with the firearms and items observed in the Vehicle are more than sufficient to constitute probable cause. *See U.S. v. Daniel*, 809 F.3d 447 (8th Cir. 2016) (probable cause where law enforcement observed behavior consistent with hand-to-hand drug transaction, recovered a baggie of drugs discarded outside the vehicle, and smelled the odor of marijuana emanating from the vehicle).

Defendant additionally argues that the evidence does not support a finding of probable cause because Deputy Sullivan's K9 partner did not indicate the

presence of a controlled substance. Filing No. 43 at 4. While an alert from a drug detection dog could support a finding of probable cause to search a vehicle, the lack of alert is not determinative. *U.S. v. Lakoskey*, 462 F.3d 965, 976 (8th Cir. 2006) (finding a negative alert by a police canine does not dispel reasonable suspicion where other factors support a such a finding); *see also*, *United States v. Ramirez*, 342 F.3d 1210, 1213 (10th Cir.2003) ("We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all."); *United States v. Jodoin*, 672 F.2d 232, 236 (1st Cir.1982) (abrogated on other grounds) (holding that a "dog's failure to react does not ... destroy the 'probable cause' that would otherwise exist. It is just another element to be considered."). Defendant cites to no authority for the proposition that a drug canine's negative alert dissipates probable cause otherwise possessed by law enforcement. Deputy Sullivan had probable cause, based on the totality of circumstances as articulated above, to believe the Vehicle contained contraband.

For these reasons, the Court finds Deputy Sullivan had probable cause to search the Vehicle and the search was not a violation of the Fourth Amendment.

**II. Inevitable Discovery Doctrine**

"[T]he inevitable discovery doctrine . . . applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact *was not* acquired (or reacquired by these lawful means)." *United States v. Baez*, 983 F.3d 1029, 1038 (8th Cir. 2020) (emphasis included); *see also Utah v. Strieff*, 579 U.S. 232 (2016). Pursuant to the inevitable discovery doctrine, "'the government must prove, by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Smith*, 21 F.4th 510, 517 (8th Cir. 2021).

Prior to the search of the Vehicle, Deputy Sullivan located two firearms on Defendant's person. Filing No. 62 at 38-39. Deputy Sullivan then requested a criminal history check and actively pursued the investigation into whether Defendant could lawfully possess firearms. *Id.* at 40. He learned, after the search of the Vehicle, that Defendant had several prior felony convictions. *Id.* at 71. Once Deputy Sullivan learned of Defendant's prior felony convictions, Deputy Sullivan had probable cause to arrest Defendant for being a convicted felon in possession of a firearm. *See* Neb. Rev. Stat. § 28-1206 (possession of a deadly weapon by a prohibited person); 18 U.S.C. § 922(g) (possession of a firearm which has been transported in interstate commerce by a prohibited person).

Deputy Sullivan testified that the Vehicle would be towed from the scene upon Defendant's arrest. Filing No. 62 at 72. Hall County Sheriff's Department Standard Operating Procedure Manual ("Manual") indicates that:

> When a vehicle is impounded or towed, as soon as practical, but before shift's end, a vehicle Impound and Inventory Record form will be completed by the deputy towing the vehicle.
>
> . . .
>
> The inventory of the vehicle will include closed containers, trunk, glove box, and any area where valuables may be kept. Items of merit contained therein should be included on the inventory sheet. If the case in which contraband is found in a vehicle during the time that an inventory sheet is being made out, the inventory sheet can be used and submitted into evidence to show the operating procedure of the Sheriff's Office, and that the contraband was found at the time the inventory sheet was filled out.

Filing No. 60, Exhibit 14, p. 2. As set forth in the Manual, and as testified to by Deputy Sullivan, an inventory of the Vehicle would have been conducted upon

11

Defendant's arrest. This search would have included any areas in which valuables may be held, including the green backpack in the front driver seat. Filing No. 62 at 52-55. Filing No. 60, Exhibit 14. Deputy Sullivan testified that all of the contraband located during the May 16, 2022 search of the Vehicle was located in areas that would have been searched during the inventory process. Filing No. 62 at 52-55.

For the reasons set forth above, even if this Court would have determined that Deputy Sullivan did not have probable cause to search the Vehicle, the Government has proven, by a preponderance of the evidence, the evidence discovered during the warrantless search would have been acquired by lawful means and inevitable discovery doctrine applies. Therefore, Defendant's motion to suppress should be denied.

For the reasons stated above,

IT HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, that defendant's motion to suppress, Filing No. 42, be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

FURTHER, IT HEREBY IS ORDERED,

A telephonic conference with counsel will be held before the undersigned magistrate judge at 9:30 a.m. on May 13, 2024 to discuss setting any change of plea hearing, or the date of the jury trial and deadlines for disclosing experts as required under Rule 16. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

Dated this 12th day of April, 2024.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge